NORTON et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. June 7, 1897.)

No. 564.

SUIT ON POSTMASTER'S BOND—EVIDENCE.

Rev. St. § 952, providing that "no claim for a credit shall be allowed upon the trial of any suit for delinquency against a postmaster * * * unless the same has been presented to the sixth auditor, and by him disallowed," etc., does not affect the admissibility of evidence offered to show that the defendant never received the amounts with which he is charged.

In Error to the District Court of the United States for the Northern District of Texas.

George Clark and D. C. Bolinger, for plaintiffs in error.

J. Ward Gurley, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEW-MAN, District Judge.

NEWMAN, District Judge. The record presents the following case for determination: Suit was brought in 1895 against Charles M. Norton and his sureties on his three official bonds as postmaster at Calvert, Tex. The suit came on for trial at the November term, 1896. Exceptions were reserved, and error is alleged as to the rulings of the court in rejecting certain pieces of evidence offered. A general view of the case, which we have, will dispose of it without going into detail as to all the evidence offered and rejected. The suit, as it finally went to trial, although not so originally, was for certain balances claimed to be due by Norton, as postmaster, in connection with the money-order business of the post office at Calvert. The United States introduced in evidence the three bonds sued on, executed by the defendant and his sureties; three certified transcripts from the auditor of the treasury for the post-office department, showing balance due by Norton as postmaster at Calvert for the period covered by the three bonds, respectively, of $33.10, $1,108.50, and $1,454.98; also evidence of demand for the said several sums of Norton and his sureties. The government having closed, the defendant offered, among other things, to show that the several balances claimed to be due by him as postmaster on the money-order business of the Calvert office had never come into his hands; that he had never received any of the money with which he was charged by the post-office department, and which was embraced in the transcript offered in evidence for the government. This evidence was objected to by the United States attorney, and rejected by the court, on the ground that it was not admissible under section 952 of the Revised Statutes. The court, having rejected defendant's evidence, directed a verdict in favor of the government for the amount sued for. The section (952) of the Revised Statutes referred to reads as follows:

"No claim for a credit shall be allowed upon the trial of any suit for delinquency against a postmaster, contractor, or other officer, agent or employé of the postoffice department, unless the same has been presented to the sixth auditor and by him disallowed, in whole or in part, or unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting to the said auditor a claim for such a credit by some unavoidable accident."

Was this section applicable to the testimony offered in the district court? That is the question for determination here. It will be seen that the language of this statute is that "no claim for a credit shall be allowed upon the trial of any suit against a postmaster * * * unless the same has been presented to the sixth auditor, and by him disallowed, in whole or in part." When there is a claim by the postmaster that money charged against him did not actually

come into his hands at all, is that a claim "for a credit"?    A claim for a credit, in the ordinary sense in which that expression is used, is against an opposing debit.    Where one is charged with certain funds as having come into his hands, and he denies that he ever received such funds, that is not a claim for a credit in any reasonable or just sense.    Where funds have come into the hands of a person by reason of some fiduciary relation, and he claims to have paid the same over either to the owner, or to some third person by his direction or authority, that is a claim for a credit.    Assuming, therefore, that the language used in this statute was used in its ordinary and usual sense, it does not embrace or apply to the case of a claim that funds with which a postmaster is charged never came into his hands at all. The use of the term "vouchers" in a subsequent part of this section emphasizes the fact that its meaning is that above indicated.    The defendant is allowed to introduce vouchers "not before in his power to procure, and that he was prevented from exhibiting to said auditor a claim for such credit by some unavoidable accident."    The "claim of credit," therefore, is to be evidenced by "vouchers."    We think this is clear, construing the meaning of the first expression in the section cited above, in connection with the language of the latter part of the section just referred to.    The claim of credit to be made is to be evidenced by "vouchers," and certainly no voucher could be presented by a postmaster for the disbursement of that which never came into his hands.    So we have no difficulty in holding that a postmaster, against whom suit is brought for default on his official bond, may defend by showing that the money, or a part thereof, as claimed by the government, never actually came into his hands, without presenting the same to the auditor for the post-office department, and having the same by him disallowed.    Any other conclusion would not only do violence to the language of the statute referred to, but do manifest injustice and wrong to defendant against whom such suit is brought.    Cited for the defendant on this question:  Myers v. U. S., 1 McLean, 493, Fed. Cas. No. 9,996;  U. S. v. Hutcheson, 39 Fed. 540; Ware v. U. S., 4 Wall. 629;  U. S. v. Dumas, 149 U. S. 286, 13 Sup. Ct. 872.    For the reasons given, we think the verdict directed in favor of the government was wrong;  therefore the judgment of the court below is reversed, with directions to award a new trial.